[Civ. No. 3412.   Fourth Dist.   Nov. 27, 1945.]

EVERETT C. STEPHENSON, JR., Respondent, v. PHOE-
NIX WOOD & COAL COMPANY et al., Appellants.

HANS INDRELIE, Respondent, v. PHOENIX WOOD &
COAL COMPANY et al., Appellants.

HARRY JAMES, Respondent, v. PHOENIX WOOD & COAL
COMPANY et al., Appellants.

William W. Shaw for Appellants Phoenix Wood & Coal Company et al.

Sarau, Thompson & Colgate for Appellants Mission Limousine Service et al.

Sims & Wallbert for Respondents.

MARKS, J.—This case involves separate appeals by two groups of defendants from a judgment in favor of plaintiffs who were injured in a collision between a station wagon, in which they were riding as passengers for hire, and a semitruck and trailer, owned by R. M. Dunlap, R. G. Baker and M. F. Greaves, being operated with their consent by the Phoenix Wood and Coal Company through Jake Kelly, its employee.

The station wagon was owned by Clarence Harlow and Emily Harlow doing business under the name of the Mission Limousine Service. It was a common carrier and was being driven by Levi Chestnut, an employee of the owners. Both drivers were on the business of their employers and acting within the scope of their employment at the time of the accident.

As the two groups of defendants take entirely conflicting positions on this appeal, we will, where possible, refer to the driver of the station wagon and its owners as the defendants, and to the other defendants as the appellants.

The appellants admit the negligence of Kelly in two respects but urge that such negligence was neither a proximate nor a concurring cause of the accident. They also urge prejudicial error in one instruction given to the jury. On the other hand the defendants admit the negligence of Chestnut; that such negligence was a proximate and concurring cause of the accident. They argue that the admitted negligence of Kelly was also a proximate and concurring cause. They find no prejudicial error in the record and urge affirmance of the judgment. They state that their appeal

was taken solely for the purpose of protecting their rights in the event of a reversal of the judgment against the appellants.

■ The instructions given to the jury are not incorporated in the record as originally filed. The appellants have moved to augment the record by their inclusion. This motion is resisted by plaintiffs on the ground of lack of diligence in preparing the record. The original instructions have been delivered to the clerk of this court and are now available to us.

Rule 12 of Rules on Appeal give us authority to order augmentation of the record on our own motion where such course seems advisable. It is the policy of this court, where possible, to have a sufficient record before it for the consideration of all material questions. Therefore the motion will be granted so we may pass upon the effect of the erroneous instruction.

■ The accident happened at about 3:30 o'clock on the morning of April 9, 1943, on Highway 99 about twenty-one miles west of the city of Indio in Riverside County. At the place of the collision the highway runs in a general easterly and westerly direction and has a cement pavement about twenty-one feet wide in its center, with hard surfaced shoulders on either side about six feet wide made of desert mix. About 315 feet west of the point of collision is the crest of a rise which descends gently for that distance. The roadway then ascends again to the crest of another rise.

Both vehicles were proceeding east. When the semi-truck and trailer had reached the foot of the decline the gasoline in the tank which was feeding the engine was exhausted. Kelly pulled over to the right, stopped his vehicle with the left rear wheel of the trailer sixteen inches north of the south edge of the cement portion of the pavement and the balance of the semi-truck and trailer on the south desert mix shoulder. He testified that he had to alight from the cab to change to another tank of gasoline. He also testified that all the lights on the semi-truck and trailer were illuminated but this is contradicted by other evidence to the effect that all the lights were out so that his counsel concedes there is sufficient evidence to support the conclusion, if drawn by the jury, that there were no lights illuminated on the semi-truck and trailer at and just before the accident.

Counsel for the appellants, in his brief, summarizes the testimony of Chestnut as to the events immediately preceding the collision as follows:

''I was going over a little raise in the highway and the first thing I seen was a little red reflector on the back end of a black tanker, and it seemed like no time elapsed at all until we had a crash. I looked for a way around it to the right and I can't recall the reason why I didn't go to the left. At the time I came over the crest of the hill I was traveling east. When I saw a reflector on the rear end of a tanker I applied my brakes. I couldn't tell how far I was behind the tanker when I first saw the reflector—it looked very close to me. It was a dark night. I did not observe any burning tail lights on the tanker at any time between the time when I first saw the reflector and the time of the collision. I would say I was traveling around 45 miles an hour when I first saw the reflector. My best recollection of the time that elapsed between the time I first saw the reflector and the collision is that it happened very quick. The first glimpse I got of the reflector, I seen the tanker. My headlights showed the reflection on the reflector and brought the tanker itself into view. When I first saw that reflector I just went over a little bump in the road. I have no idea how far I traveled after passing over the crest of that grade before the collision occurred. I believe I did not apply my brakes at any time before I observed the reflector, when I was going down that incline. . . . When I first saw the reflector I was way over to the right of the white center line. My right wheels were not on the paved portion of the highway when I saw the reflector, but they was on the shoulder—off the pavement. . . . I do not know how far ahead of me the tanker was when I first saw it and the reflector. I don't know whether I had been driving with my right wheels on the concrete surface of the highway. I don't believe I changed in any way the direction of my station wagon when I first saw the tanker, and I continued down the highway without changing the direction of my car. I applied my brakes after I saw the tanker. I can't estimate the time that elapsed between the time I saw the tanker and when I applied the brakes, nor the time it took for them to take effect, nor, the time between that and the collision.''

There is evidence in the record that the wheels of the station wagon left tire burns on the pavement for 75 feet before the collision; that the south tire burn was 16 inches south of the south edge of the cement portion of the pavement; that

these tire burns were in a straight line without change of direction. It is admitted that the right front of the station wagon ran into the left rear of the trailer.

Appellants argue that as Chestnut saw the semi-truck and trailer when at a sufficient distance from it to swerve to his left and avoid it, and as he did not, but continued on his course and crashed into it, the admitted negligence of Kelly in parking the vehicle with the left rear wheel on the cement portion of the pavement and without any lights could not have been a proximate or concurring cause of the collision as the accident would have happened if all the lights on the semi-truck and trailer had been illuminated and the vehicle had been parked entirely on the desert mix shoulder with the left rear wheel just off the cement pavement. It should be observed that it was assumed during the trial, and we will assume here, without a holding to that effect, that the desert mix shoulder was a part of the highway upon which vehicles could properly and lawfully park.

In support of their argument that the admitted negligence of Kelly was neither a proximate nor concurring cause of the accident appellants cite *McMillan* v. *Thompson,* 140 Cal. App. 437 [35 P.2d 419] ; *Mounts* v. *Tzugares,* 9 Cal.App.2d 327 [49 P.2d 883], and *Doane* v. *Smith,* 63 Cal.App.2d 691 [147 P.2d 650], none of which support their argument under the facts before us which are clearly distinguishable from those of the cited cases.

In *McMillan* v. *Thompson, supra,* defendant's truck was stalled on the highway. The car in which plaintiff's decedent was riding was passing the stalled truck to its left when a third vehicle traveling in the same direction crashed into the rear of the vehicle in which the decedent was riding throwing it into the stalled truck. The opinion recognizes the probable negligence of the driver of the stalled truck but held that the negligence of the third driver in crashing into the rear of the passing vehicle was not reasonably foreseeable and concluded that this negligence of the driver of the third vehicle was an independent intervening act of negligence which was the sole proximate cause of the accident.

In *Mounts* v. *Tzugares, supra,* a truck was parked on the paved portion of the highway leaving 14½ feet of clear pavement between it and the center line. In passing it a truck and trailer crossed to its wrong side of the center line and came into collision with plaintiff's car. The portion of

the judgment against the owner and driver of the parked truck was reversed, the court holding that the negligence of the driver of the truck and trailer in crossing the center line onto its wrong side of the road was the proximate cause of the accident.

In *Doane* v. *Smith, supra,* an automobile came into collision with a trailer attached to a truck which was parked with its left wheels on the traveled portion of the highway. The jury returned a verdict for the plaintiff and the trial judge on the hearing of the motion for new trial granted a motion for judgment notwithstanding the verdict, and judgment was entered for defendants. It was reversed on appeal with directions to enter judgment for plaintiff on the verdicts, the court saying:

"We might discuss the evidence in the case in greater detail, but it would add nothing to the controlling features of the case as we have stated them. The case presented only factual questions upon the vital issues. It clearly appeared that the act of stopping the truck and trailer on the highway was, under the circumstances, a violation of law. The questions or proximate cause and contributory negligence were close questions which a court or jury could reasonably decide either way. Defendants present a forceful argument on the latter issue and it may be that if we were trying the facts we would agree with their contention. But the case upon this issue is not one of law. We are satisfied that the implied findings of the jury upon the material issues in the case were supported by the evidence."

In the instant case the jury was justified in concluding that when the semi-truck and trailer was stopped its lights were not illuminated. Had the lights been burning as the law required, the reasonable inference might follow that Chestnut would have seen them when he topped the rise some 315 feet away instead of seeing only the reflector and trailer when something more than 75 feet from it and he might have had time to realize the danger and to avoid the collision.

The other ground urged for reversal is found in instruction 15, given at the request of plaintiffs, which defined the liability of defendants as a common carrier. It contained the following:

". . . and if you should find that from the accidental event, as a proximate result thereof, plaintiffs have suffered

injuries, you are instructed as follows: an inference arises that the proximate cause of the occurrence in question was some negligent conduct on the part of the defendant Samuel Levi Chestnut, who, at that time, was acting as the agent, and within the scope of his authority, for the defendants Mission Limousine Service, Clarence Harlow and Emily Harlow, doing business under the name and style of Mission Limousine Service. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiffs.''

To the extent that this instruction permits a verdict against both defendants under the common carrier rules it is erroneous. This instruction is found in a group of four defining the liability of a common carrier. Instruction 14 limits the application of this rule to the station wagon group. Instruction 52 clearly states there were two groups of defendants, each claiming that the negligence of the other was the proximate cause of the accident, and if they found that the negligence of one group was the sole proximate cause of the accident plaintiffs could not recover against the other.

It seems improbable that the jury was misled by the error in instruction 15 and we can find no sufficient prejudice in it to justify a reversal of the judgment.

The motion to augment the record by adding the various instructions proposed, given and refused, is granted and those instructions are made a part of the record on appeal with leave to withdraw them and return them to the county clerk of Riverside County when they have served their purpose here.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 24, 1946.