[Civ. No. 16048.   Second Dist., Div. Two.   Dec. 23, 1947.]

WAYNE MUSGROVE et al., Appellants, v. PAUL ZOBRIST, Respondent.

Kendall, Howell, Deadrich & Wooldridge and Kendall, Howell & Deadrich for Appellants.

Syril S. Tipton for Respondent.

WILSON, J.—This action was brought to recover damages for the wrongful death of Edwin W. Musgrove and Phyllis Musgrove, who were killed in the accident hereinafter described and for personal injuries suffered by the survivors. Plaintiffs have appealed from the judgment in favor of defendant following the granting of a motion for a directed verdict.

Marjorie, Wayne and Phyllis were riding in an automobile driven by decedent Edwin at the time of the accident.

When they were traveling in a northerly direction, about five and one-half miles south of Salinas, a truck and semi-trailer owned and driven by respondent crossed the center line of the highway and struck the automobile in which the Musgrove family were riding. Edwin and Phyllis were killed and Wayne and Marjorie received severe injuries.

The accident occurred at about 1:20 o'clock in the morning of September 2, 1945. Respondent was driving at a speed of about 40 miles per hour. The highway consisted of two lanes divided in the center by a white line. It was straight for some distance in both directions from the place of the accident. The weather was clear.

Respondent had started at about 7:30 a. m., on September 1, 1945, from Sacramento. He drove to Oakland and left that city at 7:30 or 8 o'clock in the evening for Los Angeles. His only stop between Oakland and the point of the accident was at San Jose. He had had no sleep after he left Sacramento.

Respondent testified that the first notice he had of anything out of the ordinary about his truck was when he heard a tire blow out and the truck swerved to the left over the line where it collided with the Musgrove car. He had seen the car approaching on the other side of the highway from which he was driving. He had a firm grasp on the steering wheel and tried to hold it but was unable to prevent his truck from turning to the left and striking the Musgrove car.

Respondent further testified that after the accident he inspected his truck and found that both front tires were flat, the right front tire appearing to have been cut and the one on the left appearing to have been blown out. The tire on the left front wheel was a recapped or retreaded tire that he had purchased before leaving Los Angeles with a load which he delivered in Sacramento. Before purchasing the tire he and the salesman who sold it to him inspected it by putting it on a spreader and determined that it was in good condition. It had no sections, scars or breaks, the inside being perfectly smooth. He also stated that he inspected the tire throughout the entire trip, his last inspection having been at San Jose, where he stopped for fuel, and that the tire appeared at all times to be in good condition.

Respondent also testified that he had never previously used a retreaded tire on the front wheel of the truck which was involved in the accident, and it was not his policy to use retreads on the front wheels; that a retreaded tire is not as

safe as a new one and for that reason he kept them off the front wheels as a rule; that "if anything happened" the front wheels are the ones most likely to go flat and that "if this had happened" on the rear wheels he would still have been able to control his truck.

A chemical engineer specializing in the rubber industry, who had worked with the Goodyear Tire and Rubber Company for 19 years, was called as a witness for respondent and testified that the blowout of the left front tire of respondent's truck was due to striking a sharp object. This was the only testimony offered concerning the cause of the blowout.

The rules of law governing the power of the court to direct a verdict are set forth in *Weck* v. *Los Angeles County Flood Control District*, 80 Cal.App.2d 182, 198 [181 P. 2d 935, 940], and in *United Air Services, Ltd.*, v. *Sampson*, 30 Cal.App.2d 135, 139 [86 P.2d 366].

█ The instant case is not one in which the court may direct the jury's verdict according to the rules announced in the cases cited. The tire expert, respondent's witness, testified that the blowout was due to the striking of a sharp object. There is no evidence that any such object was on the highway. Respondent testified that the front end of his truck struck the front end or side of the Musgrove car. Since there was no evidence of a sharp object on the highway, the jury had a right to infer that the sharp object which cut the tire was on the Musgrove car and that the blowout came with the collision and not before; or it might have inferred that the tire was cut at some time previously and blew out when the collision took place.

Respondent had been driving from 7:30 o'clock in the morning when he left Sacramento, had driven to Oakland, loaded his truck and had continued to the point of the accident with only one stop at San Jose. Since respondent had been driving, loading his truck, and again driving for a period of 18 hours without sleep, the jury had a right to infer that the truck went to the wrong side of the highway because it was out of control, and that it was out of control because of respondent's weariness, fatigue and exhaustion, and therefore, that the blowout occurred when the tire struck a sharp object on the Musgrove car.

█ Driving on the wrong side of the highway is prima facie evidence of negligence and calls for an explanation on the driver's part (*Jolley* v. *Clemens*, 28 Cal.App.2d 55, 68

[82 P.2d 51]) and the burden is upon the driver to excuse or justify his position upon the highway. (*Parker* v. *Auschwitz,* 7 Cal.App.2d 693, 696 [47 P.2d 341].) Respondent attempted such justification by his evidence concerning the blowout but the jury was not obliged to believe his testimony or to accept his version of the cause of the accident. It had a right to consider the evidence of the tire expert concerning the cause of the blowout, together with the inferences to which we have referred.

The facts presented in the instant case, the evidence as to the possible cause of the blowout, and the inferences mentioned present a situation entirely different from those found in the cases cited by respondent. In each case the evidence was clear that the accident was caused by latent mechanical defects and no contrary inferences were present. In *Doggett* v. *Lacey,* 121 Cal.App. 395 [9 P.2d 257], the steering gear stuck so that it could not possibly be turned. In *Phillips* v. *Pickwick Stages,* 85 Cal.App. 571 [259 P. 968], the foot brake pedal broke rendering it useless, but there were other elements in the case because of which the court held the defendant liable for the damage. In *Johnson* v. *Reliance Automobile Co.,* 23 Cal.App 222 [137 P. 603], the steering knuckle broke and the driver lost control of the car; for this reason and for the reason that the car was entered in a race without authority of the defendant corporation, a judgment in favor of the plaintiff was reversed. In *James* v. *White Truck & Transfer Co.,* 1 Cal.App.2d 37 [36 P.2d 401], the accident was only indirectly caused by a mechanical difficulty. Because the driving chain was not connecting the motor with the truck, the driver stopped and left the truck while he went for aid and a car crashed into the rear end of the trailer. Manifestly, these cases have no bearing on the case at bar.

Since the jury might have drawn inferences from the evidence that would have supported a verdict in favor of appellants, the judgment is reversed.

Moore, P. J., and McComb, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 19, 1948.