[S. F. No. 16676. In Bank. Apr. 2, 1942.]

IRENE FENNESSEY, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Appellants.

Thos. J. Straub, John J. Briare and W. H. Spaulding for Appellants.

John J. Taaffe, George B. Harris and P. J. Murphy for Respondent.

THE COURT.—A hearing was granted in this cause by this court after decision by the District Court of Appeal, First District, Division One. After examining the record and contentions of counsel we are convinced that the decision of the District Court of Appeal is correct, and we therefore adopt the opinion prepared by Mr. Justice Ward when this case was pending in the District Court of Appeal and make it the decision of this court, as follows:

Appeal by defendants Pacific Gas and Electric Company, a corporation, and Thomas Foley, one of its employees, from a judgment rendered following a jury's verdict in favor of plaintiff Irene Fennessey for damages for personal injuries. Mrs. Fennessey's husband died prior to the trial of the action. Defendant George L. Manecis, the driver of a jitney, as the result of a collision in which plaintiff's injuries were sustained, defaulted and judgment was taken against him.

The accident occurred on the south side of Market street just west of Tenth Street in San Francisco, where Foley had parked a company truck between the south curb and a safety zone for the purpose of cleaning, servicing and doing repair work to street lighting fixtures owned by the city and county of San Francisco. The work as performed involved the use of a "tower" truck and it is admitted that in its position near the curb there was insufficient space for eastbound traffic

to pass between it and the safety zone. Defendant Manecis, proceeding east on Market Street, passed the truck by driving his automobile, which he was using as a jitney bus, to the left (north) of the safety zone, along the street car tracks. Mrs. Fennessey was standing in or very near the marked pedestrian lane which crosses Market Street at Tenth Street, when she was hit by the Manecis car.

The main contentions of appellants are that the evidence proves as a matter of law that at the time of the accident they were engaged in "emergency" work within the meaning of a municipal ordinance, but that, assuming negligence on their part, the evidence fails to show that such negligence was a proximate cause of the accident. In regard to the latter contention, it is their theory that the act of the jitney bus driver broke the chain of causation between any negligence in parking the truck and plaintiff's injuries.

Section 138 of the Motor Vehicle Act (now section 586 of the Vehicle Code of 1935) and article V, section 35 (now section 76), San Francisco Traffic Ordinance, are substantially to the same effect, namely, the prohibition of parking between a safety zone and an adjacent curb. Appellants contend that section 8, article II of the traffic ordinance contains an exception in favor of public utilities "while the driver of any such vehicle is engaged in the necessary performance of emergency duties." Our attention has not been called to a definition of the word "emergency" in the traffic ordinance.

In *Fennessey* v. *Pacific Gas & Electric Co.*, 10 Cal. (2d) 538, 540 [76 P. (2d) 104], on a former appeal in this case, the court held that "The parking of the truck between the safety zone and the curb was a violation of state law and municipal ordinance . . . in force at the time of the accident . . . unless it was 'engaged in the necessary performance of emergency duties'."

The word "emergency" as used in legislative enactments does not always have precisely the meaning ascribed to it by lexicographers. (*Huff* v. *City of New York*, 202 App. Div. 425 [195 N. Y. Supp. 257].) It may be defined by the statute or ordinance. If so, an interpretation thereof must be confined to and limited by such definition and the subject matter enacted. The law governing this question indicates that "emergency" has reference to a method adopted as an expedient for meeting a situation which ordinarily calls for

immediate action. (*Mason* v. *Crawford*, 17 Cal. App. (2d) 529 [62 P. (2d) 420].) The evidence shows that to keep the lights on both sides of Market Street reasonably serviced and in repair requires more than a month's continuous work, going from pole to pole. Admittedly the work which Foley was doing, or was expected to do, upon the fixtures, was routine in nature and was not unforeseen, unexpected or the correction of a condition which had suddenly arisen.

Appellants requested an instruction which first quoted a part of the ordinance and then proceeded as follows: "Therefore, if you believe from the evidence that, at or about the time of the accident in question, the said Thomas Foley was engaged in work involving the maintenance of the street lamps as an employee of the Pacific Gas and Electric Company, then I instruct you that in that event the defendants Thomas Foley and Pacific Gas and Electric Company were not guilty of any negligence and your verdict must be for those defendants and against the plaintiff.'' The instruction was refused with the notation "no evidence of the existence of any emergency.'' The refusal of this instruction must be approved. The repair vehicle was not used in responding to an emergency call, nor was it parked as the result of its arrival at the scene of an "emergency.'' It was simply engaged in its normal daily routine of cleaning and repairing street light fixtures.

The fact that the method employed in servicing was the most practical that could be used, or that appellant company had a contract with the city to perform the work, can play no part in the determination of the question. The record does not disclose any designated means or method to be used in performing the work. The contract could not justify the violation of a parking law except upon the theory that the servicing performed by appellants was an "emergency,'' which, as we have just said, was not the case. Until a legislative body in the exercise of its authority reframes an ordinance or statute excepting from the law prohibiting parking between a safety zone and an adjacent curb, vehicles engaged in the performance of routine work on behalf of a governmental agency, appellants are without remedy.

Whether the parking of appellants' repair truck between the safety zone and the curb had anything to do with the swerve or turn of the jitney bus on to the first or second

street car tracks, as the result of which the accident occurred, or whether the jitney driver could have averted such accident, notwithstanding that he violated the ordinance prohibiting driving to the left of a safety zone, were purely questions of fact to be determined by the jury. If the jury believed the evidence in support of respondents' theory that the parking of appellant company's car was a proximate cause of the accident, we are unable to interfere. (*Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal. App. (2d) 674 [102 P. (2d) 422, 104 P. (2d) 26]; *McKay* v. *Hedger*, 139 Cal. App. 266 [34 P. (2d) 221]; *Gett* v. *Pacific Gas & Electric Co.*, 192 Cal. 621 [221 Pac. 376]; *Winsky* v. *De Mandel*, 204 Cal. 107 [266 Pac. 534]; *Wright* v. *Los Angeles Ry. Corp.*, 14 Cal. (2d) 168 [93 P. (2d) 135]; *Hurtel* v. *Albert Cohn, Inc.*, 5 Cal. (2d) 145 [52 P. (2d) 922].) In *Lacy* v. *Pacific Gas & Electric Co.*, 220 Cal. 97, 98 [29 P. (2d) 781], the court said: ''The authorities in this state hold that where the original negligence continues and exists up to the time of the injury, the concurrent negligent act of a third person causing the injury will not be regarded as an independent act of negligence, but the two concurring acts of negligence will be held to be the proximate cause of the injury.'' (*Rae* v. *California Equipment Co.*, 12 Cal. (2d) 563 [86 P. (2d) 352]; *Taylor* v. *Oakland Scavenger Co.*, 17 Cal. (2d) 594 [110 P. (2d) 1044].)

The judgment is affirmed.

EDMONDS, J., Dissenting.—Although I agree that the appellants were guilty of negligence as a matter of law, I fail to find any causal connection between their negligence and the injuries sustained by the respondent. Ordinarily, the question of proximate cause, like those of negligence and contributory negligence, is one of fact to be determined by the jury. But where only one conclusion may reasonably be drawn from the facts, the question becomes one of law (*Schwartz* v. *California Gas & Elec. Co.*, 163 Cal. 398 [125 Pac. 1044]; *Traylen* v. *Citraro*, 112 Cal. App. 172 [297 Pac. 649]; *Gallichotte* v. *California etc. Assn.*, 4 Cal. App. (2d) 503 [41 P. (2d) 349]; *Kostouros* v. *O'Connell*, 39 Cal. App. (2d) 618 [103 P. (2d) 1028]; Restatement, Torts [American Law Institute], sec. 434).

According to uncontroverted evidence, the truck was

parked in such a manner as to prevent automobiles east bound on Market Street from passing between the curb and the safety zone. This zone is 64 feet in length and is protected by raised buttons. The tracks of the Municipal Railway lie four feet north of and parallel with the safety zone, and about the same distance farther north are the tracks of the Market Street Railway Company.

Immediately prior to the accident, the respondent had alighted from a bus and had stepped into the east end of the safety zone near the pedestrian crosswalk. At the time Manecis had reached a point variously estimated as from 20 to 100 feet away from the west end of the safety zone, he observed the truck blocking the street between it and the curb. Following two or three other cars ahead of him, he swerved to his left and proceeded for several feet along the second track until he struck respondent, who was in the crosswalk, causing severe injuries. During all of this time, his automobile was traveling at a speed of about 10 to 15 miles per hour.

It is well settled that the violation of a statute or municipal ordinance constitutes negligence *per se,* provided the plaintiff is one of a class of persons whom the statute was intended to protect (*Baillargeon* v. *Myers,* 180 Cal. 504 [182 Pac. 37]; *Rabe* v. *Western Union Tel. Co.,* 198 Cal. 290 [244 Pac. 1077]; *Benjamin* v. *Noonan,* 207 Cal. 279 [277 Pac. 1045]; 19 Cal. Jur. 632; Prosser on Torts, p. 266), unless such violation was jutifiable or excusable under the circumstances (*Mora* v. *Favilla,* 186 Cal. 199 [199 Pac. 17]; *Parker* v. *Auschwitz,* 7 Cal. App. (2d) 693 [47 P. (2d) 341].) Market Street is a thoroughfare with four street car tracks, and the traffic thereon is frequently congested. It was undoubtedly the design of the city ordinance to keep the traffic lane between the curb and the safety zone open and thereby prevent the hazard to pedestrians seeking to board, or leave street cars which would be caused by vehicles traveling on the street car tracks. At the time of the appellants' illegal parking, the respondent had stepped into the safety zone. She was therefore among those whom the statute was intended to protect.

But in order to be a legal cause of another's injury, it is not sufficient that the harm would not have occurred had the actor not been negligent. An original act of negligence is not a proximate cause of an injury when the damage di-

rectly results from the intervening act of a third person which was one not to be reasonably anticipated by the defendant as likely to result from his own act. If, with the effects of the former negligence consciously before him, the intervening actor is guilty of a new negligent act which may not be said to flow with logical sequence from the original negligent act, the chain of causation is broken and the original act of negligence is not the proximate cause of the accident. These are fundamental and accepted principles in the law of torts (*Vizelich* v. *Southern Pacific Co.*, 126 Cal. 587 [59 Pac. 129]; *Trice* v. *Southern Pacific Co.*, 174 Cal. 89 [161 Pac. 1144]; *Schwartz* v. *California Gas & Elec. Co.*, *supra*; *Katz* v. *Helbing*, 205 Cal. 629 [271 Pac. 1062, 62 A. L. R. 825]; *Hauser* v. *Pacific Gas & Elec. Co.*, 133 Cal. App. 222 [23 P. (2d) 1068]; *McMillan* v. *Thompson*, 140 Cal. App. 437 [35 P. (2d) 419]; *Camp* v. *Peel*, 33 Cal. App. (2d) 612 [92 P. (2d) 428].)

Applying these principles to the facts of the present case, as I read the record, it is clear that the sole legal cause of the respondent's injuries was the independent act of Manecis in operating his car in such a careless manner as to violate her rights as a pedestrian by running her down in the marked crosswalk. Admitting that the act of the appellants in obstructing the passage of traffic between the safety zone and the curb forced Manecis to take a path of travel made illegal by city ordinance, there is no evidence that the parked truck caused him to operate his automobile carelessly. On observing the truck, he made his first turn to the left at least 20 feet from the west end of the safety zone. He then proceeded along the municipal tracks for about 25 feet, at which point he swerved again to the left and drove along the tracks of the Market Street Railway Company to the point in the pedestrian lane where the respondent was struck. He traveled for a distance of at least 84 feet from the point of his original turn to the place of the accident, and during this course of travel his speed was not more than 10 to 15 miles per hour. The evidence clearly indicates that after he had turned left to avoid the parked truck, his subsequent movements were governed by his own free choice without any possible reference to the truck and unaffected by any act of the appellants. There is no claim that the truck caused Manecis to lose control over his automobile and the evidence is entirely to the contrary. After he turned to the left, there

was nothing about the truck which could have affected his action in directing the course or speed of the vehicle he was driving.

Under these circumstances, the act of Manecis in striking respondent was a new act of negligence, wholly unrelated to the negligence of the appellants. There is no basis for holding that Foley should reasonably have anticipated that a car, forced to operate to the left of the safety zone but admittedly within the control of the driver, would be so negligently driven as to strike a pedestrian standing in the marked crosswalk some 86 feet away. The unlawful occupation of the street by the appellants' truck was, at most, a condition and not a contributing cause of the accident (*McMillan* v. *Thompson, supra*).

The present case cannot be likened to those wherein the facts show that the vehicle operated by the defendant came to a sudden stop, forcing other vehicles approaching from the rear to swerve out suddenly, and a pedestrian or automobile was struck by another automobile whose driver was avoiding, or attempting to avoid, the defendant's car (*Gett* v. *Pacific Gas & Elec. Co.,* 192 Cal. 621 [221 Pac. 376] ; *Mason* v. *Crawford,* 17 Cal. App. (2d) 529 [62 P. (2d) 420].) Manecis collided with the respondent, not in swerving to avoid hitting the appellants' truck, but only after he had proceeded some 86 feet farther in full control of the speed and direction of the vehicle he was operating.

The case is likewise distinguishable from decisions in which the negligent act of the defendant was a concurring factor and actively participated in the accident. For example, in *Lacy* v. *Pacific Gas & Elec. Co.,* 220 Cal. 97 [29 P. (2d) 781], the defendant negligently left an electric light pole in a farm roadway. The plaintiff was about to enter an automobile parked in front of the pole. As the driver of the automobile was endeavoring to start the motor, the car dashed violently backward and hurled the pole in the air in such a manner as to strike the plaintiff on the leg. The defendant's act was held to have been the proximate cause of plaintiff's injuries. But in the present case, at the time the accident occurred the appellants' act had ceased to have any effect upon the movements of Manecis and it did not actively concur in producing the injuries sustained by the pedestrian.

The respondent relies upon *McKay* v. *Hedger,* 139 Cal.

App. 266 [34 P. (2d) 221], and *Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal. App. (2d) 674 [102 P. (2d) 422, 104 P. (2d) 26]. In the McKay case, the defendants double parked their ice truck in such a manner as to obstruct the view of other drivers lawfully traveling on the street. The plaintiff, a minor child, ran from behind the truck into the path of an oncoming automobile and was injured. In the Mecchi case, the defendant illegally parked its moving van at an angle to the curb opposite two cars parked at the curb across the street, thus reducing the space for passing cars. In passing through this space, a car hit the plaintiff, a minor. In both cases, the question whether the defendant's illegal parking was a proximate cause of the accident was held to be a question for the jury. However, in each of them, the parked automobile obscured the vision of the oncoming drivers and the injured pedestrians, and the accident occurred while the passing cars were in the very act of proceeding around the standing vehicle. The facts of the present case are entirely different and compel a contrary result.

Concerning the holding that the former decision (*Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal. (2d) 538 [76 P. (2d) 104]), has now become the law of the case, that appeal was taken, in part, from an order granting the respondent a new trial upon the ground that certain instructions given by the trial court upon the issue of proximate cause were erroneous. The propriety of the challenged instructions was the sole question decided by the court upon that appeal; whether or not the evidence was sufficient as a matter of law to establish the act of the appellants as a proximate cause of the accident was not decided by the court and, in my opinion, the doctrine of the law of the case does not apply to the issues now before the court.

For these reasons, I believe that the judgment should be reversed.

Curtis, J., concurred.

Appellants' petition for a rehearing was denied April 30, 1942. Curtis, J., and Edmonds, J., voted for a rehearing.