[Civ. No. 24532.   Second Dist., Div. One.   Aug. 3, 1960.]

ROBERT W. ARTHUR, a Minor, etc., Appellant, v.
SANTA MONICA DAIRY COMPANY (a Corporation)
et al., Respondents.

484

Newton & Irvin and Robert G. Irvin for Appellant.

Kinkle & Rodiger and George P. Kinkle, Jr., for Respondents.

LILLIE, J.—Plaintiff appealed from a judgment in defendants' favor rendered by the trial court sitting without a jury. His action was for damages for personal injuries received while riding as a guest in an automobile which collided with the rear of defendants' parked truck. He contends only that the lower court's finding that the accident was not proximately caused by the conduct of the defendants is unsupported by the evidence. The issue of plaintiff's contributory negligence is not raised on appeal; no finding thereon was made by the trial court, although pleaded as an affirmative defense on which some evidence is found in the record.

We cannot conclude, as urged by appellant, that "the facts are not in dispute," for the conduct of the driver of the car in which plaintiff was riding, which appellant in his brief has chosen to ignore and which is here the deciding factor on the issue of proximate cause, was a matter which was determined by the trial court from indirect evidence. However, the following facts, and those relating to defendants' conduct, are not controverted. At the time of the collision, on February 6, 1957, at approximately 11:45 a.m., the weather was sunny and clear; Lincoln Boulevard at the location of the accident was 52 feet wide, admitting two lanes north and two lanes south for travel and a parking lane on either side

of the street; the defendants' Divco milk truck was double parked, facing north, in the right hand lane of traffic next to the line of parked cars, 277 feet south of the south curb line of Wilshire Boulevard (approximately in the middle of the block) between Arizona Boulevard and Wilshire and 12 feet west of the east curb line of Lincoln Boulevard; the milk truck had been double parked there for some time and the driver was away from it delivering milk when the collision occurred; the force of the impact was such as to knock the truck forward about two feet and the Chevrolet, in which plaintiff was riding, back approximately 2 feet; and there were no skid marks found in the area.

Concerning the conduct of the occupants of the 1951 Chevrolet in which plaintiff was a passenger, in particular that of the driver, we view the evidence in the light most favorable to the judgment. ▮▮ "In considering appellant's claims of the sufficiency of the evidence it is our duty to so construe the evidence as to support the contentions of respondent to the extent that it is fairly susceptible of such construction, and in cases of conflict to accept as true that evidence which tends to sustain the verdict, unless it is inherently so improbable as to be palpably false (Citation)." (*Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631, 633 [67 P.2d 678]); and if several inferences can reasonably be deduced therefrom, this court must accept that which supports the judgment.

Plaintiff, a minor, was one of three high school students riding as a guest in the front seat of a 1951 Chevrolet driven by John Hill. Plaintiff was seated on the right side of the car and between him and the driver sat a third boy, Gene, who was smoking a cigarette. They were traveling north on Lincoln Boulevard in the right hand lane of traffic next to the parked cars, between 20 and 25 miles per hour, at which speed John had driven for approximately one and a half blocks. As they crossed Arizona on Lincoln, traffic was light and there was only one car traveling near—in the lane to their left ahead of them, going in the same direction.

Gene and John were neither available nor testified at the trial. However, evidence from a traffic report shows that after the accident plaintiff told Officer Crouch, who investigated the same, "I did not see the milk truck before we hit it as I was looking at Gene and John (driver) as they were trying to locate a lighted cigarette on the floor mat between them when the accident occurred." Plaintiff, at the trial, testi-

fied that south of Arizona Boulevard on Lincoln, John, the driver of the Chevrolet, announced that he had been burned by a cigarette and that it had fallen to the floor; that "within ten seconds" of the collision he bent down to look "as the other two did" and "was trying to locate the lit cigarette on the floor of the car"; that the next thing he knew they had hit the truck; and that he did not see defendants' truck at any time before the collision, did not see, feel or hear the driver do anything to avoid colliding with the same, felt no application of brakes of the car in which he was riding before the accident, and no one therein gave any indication before the collision that something might happen.

Although on cross-examination plaintiff attempted to make it clear that he had not personally observed John, the driver, look on the floor for the cigarette before the accident, it is apparent from his prior statements and other evidence in the record that for ten seconds before, and at the time of, the collision the car in which plaintiff was riding was being propelled forward between 20 and 25 miles per hour—in effect with a blind driver, for John was otherwise engaged in looking on the floor mat of his car for a lighted cigarette and was not looking in the street ahead of him, and at no time saw the truck in front of him before he drove into its rear.

Defendants double parked the milk truck in violation of section 586,■ Vehicle Code, which provides in pertinent part "(a) No person shall stop, park, or leave standing any vehicle whether attended or unattended, except when necessary to avoid conflict with the other traffic or in compliance with the directions of a peace officer or traffic control signal device, in any of the following places . . .

"(8) On the roadway side of any vehicle stopped, parked or standing at the curb or edge of a highway"; and it cannot be denied that defendants' conduct constituted negligence (*Thomson* v. *Bayless*, 24 Cal.2d 543 [150 P.2d 413]).

This brings us to the question of proximate cause. Although, as suggested by appellant, it becomes one of law when the facts are undisputed and only one conclusion may be drawn therefrom, it is apparent from the record before us that the issue of proximate cause in the instant case is essentially one of fact (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872]; *Fennessey* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 141 [124 P.2d 51]; *Fowler* v. *Callis*, 159 Cal.App.2d 746 [324 P.2d 728]; *Been* v. *Lummus*

*Co.*, 76 Cal.App.2d 288 [173 P.2d 34]; *Thomson* v. *Bayless*, 24 Cal.2d 543 [150 P.2d 413]).

■ Appellant in his brief has avoided discussion of the negligent conduct on the part of the driver of the Chevrolet; and has summarily disposed of the matter by stating that the negligence of the driver cannot be imputed to the plaintiff which, of course, is a correct statement of the law (*Hill* v. *Ralph*, 117 Cal.App.2d 434 [256 P.2d 48]). However, applying the following rules relating to proximate cause, the negligent conduct of the driver of the Chevrolet is that which appears to constitute the intervening act which broke the chain of causation and which constituted the proximate cause of the accident.

We do not here have the simple case of direct causation, but one in which an independent force, consisting of the negligent conduct of the driver of the Chevrolet, intervened. Appellant contends, however, that had defendants' truck not been illegally parked the collision would not have occurred, thus the double parked milk truck was the proximate cause of the accident. It would indeed be nonsense to say that had the truck not been there the Chevrolet would still have run into its rear; but it is not nonsense to suggest that had defendants' parking not been in violation of the law the Chevrolet would still have collided with it. The evidence clearly shows that John would have run into anything at that location, legally or illegally parked. ■ "(I)f the accident would have happened anyway, whether defendant was negligent or not, then his negligence was not a cause in fact and, of course, cannot be the legal or responsible cause." (Summary of California Law, Witkin, 7th ed., vol. 2, Torts, § 284, p. 1484). See also Rest., Torts, § 432; 15 Cal. L. Rev. 1, 3; 20 Cal. L. Rev. 396; 38 Cal. L. Rev. 375; 9 Stanford L. Rev. 60. ■ The record discloses, and the trial court impliedly found, that for 10 seconds prior to and at the time of the collision, the driver of the Chevrolet was looking on the floor of his car for a burning cigarette; that during this period he was not watching the street in front of him and did not see the milk truck, either before or at the time of the collision; and that had he been looking he would have had a clear unrestricted view of the truck already parked in plain sight ahead of him and could have avoided the accident either by changing to the empty traffic lane on his left and passing the truck or by slowing down and bringing his car to a halt safely behind. It is abundantly clear from the conduct of the driver of the Chevrolet that

had defendants' milk truck, instead of being illegally parked, been lawfully going slowly, or been legally stopped "to avoid conflict with other traffic," or as the last of a line of cars, stopped "with other traffic or in compliance with the direction of a police officer or traffic signal device" (Veh. Code, § 586, subd. (a)); or had the obstruction in the street ahead of the Chevrolet been a lawful one, vehicular or otherwise, or constituted the car driving ahead of plaintiff in the left lane, which had crossed into plaintiff's lane and lawfully slowed down or legally stopped in front of the Chevrolet, the collision still would have occurred—because the driver simply was not looking and thus would have struck anything in front of him. Following the foregoing rule, it cannot be said under these circumstances that defendants' negligence in double parking and leaving the truck where it was, constituted the "cause in fact" of the accident.

Appellant's position that defendants' original negligence was continuing negligence right up to the time of the collision, thus constituting proximate cause, is not well taken. ▆▆ Cases too numerous to mention have well established that an original act of negligence is not a proximate cause of injury when the injury directly results from the intervening act of another, which is an act not to be reasonably anticipated by the first party as reasonably likely to occur and follow through from his own act. The cases hereinafter cited are only a few in a long line of authority in which the intervening act was held to be of such a nature that it could not reasonably have been anticipated or foreseen, and it, as in the instant case, broke the chain of causation relieving the original negligent actor from liability. (*Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678]; *Marovich* v. *Central California T. Co.*, 191 Cal. 295 [216 P. 595]; *Oakland Bank of Savings* v. *Murfey*, 68 Cal. 455 [9 P. 843]; *Newman* v. *Steurernagel*, 132 Cal.App. 417 [22 P.2d 780]; *Hale* v. *Pacific Tel. & Tel. Co.*, 42 Cal.App. 55 [183 P. 280]; *Catlin* v. *Union Oil Co.*, 31 Cal.App. 597 [161 P. 29]; *Wyckoff* v. *Pajaro Valley etc. R.R. Co.*, 11 Cal.App. 106 [103 P. 1100].)

Conceding defendants' original negligence, had the driver of the Chevrolet been looking ahead and for some reason, because of traffic or a sudden stop on the part of the driver of the truck, been unable to pass or stop behind the truck, the negligent conduct of the defendants might well establish proximate cause; but the truck had been parked for some time, the Chevrolet had a clear lane on its left, it had been traveling

on Lincoln Boulevard for several blocks between 20 to 25 miles per hour and had the driver been looking he could have driven away from the dangerous position or otherwise have avoided the accident. But instead he ran into the rear of the parked truck because he lowered his eyes from the road in front of him to the floor of his car. The collision was the direct result of the independent intervening act of John Hill—that of taking his eyes from the road ahead and looking on the floor for a lighted cigarette—which act could not have been reasonably anticipated or foreseen by defendants because it was of a nature not reasonably likely to happen. A similar example of a reasonably unforeseeable act arose out of defendants' stalled truck in *McMillan* v. *Thompson,* 140 Cal.App. 437 [35 P.2d 419]. Plaintiff, in order to pass the truck was required to turn left and as he did so, a third car driven by one Deaver crashed into the rear of plaintiff's car, which in turn crashed into the rear of defendant's truck. The court discussed the general rules applicable to such a situation as outlined in *Newman* v. *Steurernagel,* 132 Cal.App. 417 [22 P.2d 780], which cited *Hale* v. *Pacific Tel. & Tel. Co.,* 42 Cal.App. 55 [183 P. 280]; *Reynosa* v. *Pickwick Stages System,* 115 Cal. App. 383 [1 P.2d 548]; *Katz* v. *Helbing,* 205 Cal. 629 [271 P. 1062, 62 A.L.R. 825]; and the court stated at page 441: "If it be assumed that the driver of the truck and trailer was negligent in stopping where he did, we think it must be held, under the established rules, that this act upon his part was not a proximate cause of the accident here in question. Had the truck and trailer been moving at the time, the appellants would not have been negligent, but the general situation, so far as the negligence of Deaver is concerned, would have been the same. The stalled truck was plainly visible, with its lights burning, and the left half of the highway was entirely clear, as testified to by the driver of the light truck which was about to pass. Under such conditions, while the driver of the stalled truck must have known that other vehicles would be apt to pass, it would be unreasonable to expect him to also anticipate that, while another car was passing, a third car would come up from behind and crash into the passing car. While a sudden stop frequently causes a collision with a car approaching from the rear, it is not ordinarily to be expected that drivers of automobiles will run head-on into cars ahead of them which are in plain sight and have been long stopped. . . . In our opinion the injury here resulted not only from an intervening act of a third party but from one which was not one to reason-

ably have been anticipated by the driver of the stalled truck as likely to occur and follow through and as the result of his own act." We believe the reasoning in this case controls. Similarly it would hardly be expected that the driver of the milk truck should or would have been expected to reasonably anticipate that any driver would run head-on into his truck parked ahead of him which was in plain sight and had been stopped for some time.

The cases upon which appellant relies involve facts differing widely from those here present, no intervening act appears to have broken the chain of causation, and at most, hold that negligence and proximate cause are questions to be decided by the trier of fact. They do not support a reversal in the present case. (*Mason* v. *Crawford,* 17 Cal.App.2d 529 [62 P.2d 420] ; *Keiper* v. *Pacific Gas & Electric Co.,* 36 Cal.App. 362 [172 P. 180] ; *Flynn* v. *Bledsoe Co.,* 92 Cal.App. 145 [267 P. 887] ; *Rauch* v. *Southern Calif. Gas Co.,* 96 Cal.App. 250 [273 P. 1111].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 27, 1960. Peters, J., was of the opinion that the petition should be granted.